IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. JAMES YOUNG (#N-71985), | ) ) ) | |
| Petitioner, | ) ) | Case No. 07 C 1100 |
| v. | ) ) | |
| TERRY McCANN,[1] Warden, Stateville Correctional Center, | ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Pro se Petitioner James Young filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Young's habeas petition. The Court also denies Young's renewed motion to stay his habeas petition.

## BACKGROUND

Young does not present clear and convincing evidence challenging the statement of facts as set forth in the Illinois Appellate Court's opinion affirming the judgment of the Circuit Court of Cook County, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *see also Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007). The Court, therefore, adopts the underlying facts as set forth by the Illinois Appellate Court, First District, in Young's direct appeal. *See People v. Young,* 263 Ill.App.3d 627, 200

---

[1] Petitioner James Young is currently incarcerated at Stateville Correctional Center at which Terry McCann is the Warden. The Court thereby substitutes McCann as the proper Respondent pursuant to Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. *See* Fed. R. Civ. P. 25(d)(1).

Ill.Dec. 134, 635 N.E.2d 473 (1994). The Court begins with a brief recounting of the facts as determined by the Illinois Appellate Court. *Easley v. Frey,* 433 F.3d 969, 970 (7th Cir. 2006).

## I.    Factual Background

Evidence at trial established that a group of men, including Petitioner James Young, were involved in gang-related shootings of two men near the Stateway Gardens housing complex in Chicago, Illinois ("Stateway"), specifically, at the 3517-3519 South Federal Street building on the night of November 9, 1989.

### A.    Denise Brady's Testimony

At trial, a resident at Stateway, Denise Brady, testified that about 10 p.m. on November 9, 1989, she noticed two men in dark clothing and ski masks standing near an elevator in the building's open first-floor lobby. Brady went to the ground floor lobby where she saw a man she later identified as Kevin Young. Brady testified that Kevin Young was wearing dark clothes and a baseball cap. Also, Brady testified that Kevin Young yelled "come here" and then "come here, motherfucker," in the direction of one of the victims, Dan Williams, who was approaching the building from the street. Kevin Young then retrieved a gun from his coat and repeatedly fired at Williams, who began "running and weaving" towards an Illinois Institute of Technology ("IIT") research building across the street. Brady testified that Williams stumbled onto the ground and then she fled upstairs to her apartment. Further, Brady testified that when she reached the first-floor she saw two men in ski masks also shooting at Williams. When she looked down, Brady noticed two additional shooters on either side of the building.

### B.    Ruth Wilson's Testimony

Another Stateway resident, Ruth Wilson, who lived in an adjacent building, testified that

she was in her bedroom when she heard shots coming from the 3517-19 building.  She further testified that when she looked out her window, she saw at least five men walking away from the 3517-19 building and toward her building.  The men were wearing dark clothing and hats or hoods.  Ruth Wilson recognized two of them as Kevin Young and Thomas Carter, and saw Kevin Young put a gun under his coat.  She further testified that she watched the men until they were out of sight.  She then went to look for her son, Deanda Wilson, who was outside.

### C.    Deanda Wilson's Testimony

At trial, Deanda Wilson ("Wilson") identified all of the co-defendants as members of a particular street gang.  He further testified that at the time of the 1989 shooting he was 12-years-old and that he was a member of an enemy gang.  At about 10 p.m. on the night of the shooting incident, Wilson was on the first floor on the 3519 side of the building.  He testified that he heard people call out "here comes [Kevin Young]", and when Wilson ran to the first-floor porch, he saw the co-defendants approaching the building dressed in black clothing.  Wilson testified that Kevin Young wore a baseball cap and the other co-defendants wore knit caps pulled down just above their eyes.  Further, Wilson indicated that at that point, the co-defendants' faces were uncovered, and he could see them in the light.

Moreover, Wilson testified that co-defendants James Bannister and Eric Smith arrived at the building first and waited near a janitor's closet under the 3519 side of the building.  Wilson then ran to the second-floor porch and saw Michael Meyers, Kevin Young, and Thomas Carter standing below him in front of the building.  Wilson also testified that he saw Petitioner James Young and Michael Johnson on the first-floor porch of the 3517 side of the building.

Wilson testified that the victim, Dan Williams, was standing near the play lot in front of

the building when someone yelled "come here, motherfucker." Williams responded, "I ain't have nothing to do with it," after which Meyers, Carter, and Kevin Young stepped out from the building, retrieved guns from their coats, and fired at Williams. Further, Wilson stated that Bannister and Smith similarly stepped out from their positions and began firing, as did Petitioner James Young and Johnson. The shooting continued for about 15 seconds and Williams stumbled through the play lot towards the IIT building. Wilson further testified that Williams eventually fell between the revolving doors of the IIT building, and the co-defendants fled with their guns in their hands.

On cross-examination, Wilson admitted that he had told police after the shooting that James Young and the others had pulled their caps completely over their faces. Also, Wilson had testified before the grand jury that as he stood on the second floor porch, he knew that Bannister, James Young, and others were standing on the porch "under the building." When asked if he could actually see them, he responded that he could not, but knew they were there "because they wasn't outside the building with the rest."

### D.    IIT Security Testimony

Security personnel in the lobby of the IIT research building testified that a group of men chased Dan Williams towards the IIT building. The testimony also revealed that while these men directed multiple shots at Williams, a bullet struck and killed Thomas Kaufman, a security guard stationed inside IIT's front doors.

### E.    A.W.'s Testimony

The State's theory at trial was that the co-defendants killed Dan Williams in a case of mistaken identity to avenge the sexual assault of Kevin Young's girlfriend, A.W. At trial, A.W.

4

testified that two days prior to the shooting, rival gang members harassed, kicked, and threw objects at her. She further testified that the rival gang members took her to an apartment and sexually assaulted her. After the police arrived, the rival gang members fled the building. A.W. also testified that during the assault, "Williams" repeatedly demanded to know where Kevin Young was and threatened A.W. with a gun. Furthermore, A.W. testified that a few hours prior to the shooting, a meeting was arranged between she and Kevin Young at the apartment of Lisa Tolbert, a friend in Stateway. At Young's request, A.W. identified the participants in the sexual assault. Kevin Young and Carter subsequently left the apartment, returning later with Johnson, Meyers, and James Young. According to A.W., the five men left the apartment at approximately 10 p.m. on November 9, 1989. A.W. further testified that each man was dressed in black and carrying a gun. Further, A.W. stated that when the men returned approximately 20 minutes later, they were wearing ski masks or stocking caps over their faces. A.W. also testified that Kevin Young took the guns the men were carrying and placed them in a radiator. The testimony of two police officers established that James Young and Carter were arrested at Lisa Tolbert's apartment the day after the shooting.

## II. Procedural Background

A jury convicted Petitioner James Young and co-defendants Michael Meyers, James Bannister, Michael Johnson, Kevin Young, and Thomas Carter of two counts of first-degree murder in the Circuit Court of Cook County, and the trial court sentenced them to life imprisonment. (Ex. A, *People v. Young,* 263 Ill.App.3d 627, 200 Ill.Dec. 134, 635 N.E.2d 473 (1994)). James Young and his co-defendants appealed, raising the following issues: (1) the State violated discovery rules by failing to disclose A.W.'s pre-trial statements; (2) James Young

and Bannister were not proven guilty beyond a reasonable doubt because their convictions were based largely on the testimony of Deanda Wilson, an admitted rival gang member whose grand jury testimony indicated he could not see defendants at the time of the shooting; (3) the trial court erred in admitting evidence of gang affiliation; (4) the doctrine of transferred intent did not apply where both the intended victim and an unintended victim were killed; (5) the police obtained Johnson's confession in violation of his constitutional right to counsel; and (6) trial counsel was ineffective in offering the prior testimony and statements of A.W. and Wilson merely for impeachment, rather than as substantive evidence.  (Ex. A.)  The Illinois Appellate Court, First District, affirmed James Young's conviction and sentence on March 31, 1994.  (Ex. A.)

James Young then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois arguing that the prosecutors violated the rules of discovery and the guarantee of due process by failing to disclose before trial that:  (1) A.W. repudiated her prior statements; (2) Detective Winstead made assurances to A.W. that she would not be prosecuted for perjury; and (3) the co-defendants made oral statements to A.W.  (Ex. C.)  On October 6, 1994, the Supreme Court of Illinois denied Young's PLA.  (Ex. D.)

On August 3, 1995, James Young filed a post-conviction petition in the Circuit Court of Cook County pursuant to 725 ILCS 5/122-1, *et seq.*  (Ex. E.)  In his post-conviction petition, Young argued that:  (1) perjured testimony was given before the grand jury; (2) his trial counsel was constitutionally ineffective; and (3) his appellate counsel was constitutionally ineffective. (Ex. E.)  On July 7, 1998, Young filed a supplemental post-conviction petition arguing that an evidentiary hearing was necessary because:  (1) Deanda Wilson's trial testimony was incredible

and contradicted the State's only neutral and credible occurrence witness, and made Wilson's recantation consistent with other trial testimony and therefore more reliable; (2) trial counsel failed to impeach Deanda Wilson, the States's only occurrence witness, on how long Wilson knew Young prior to the shooting, and whether Willie Sims was with Wilson during the shooting; (3) trial counsel failed to offer as substantive evidence A.W.'s prior inconsistent statements; (4) ineffective assistance of trial counsel for failing to impeach A.W. about the facts surrounding her alleged sexual assault and the motive the State presented for the shooting; and (5) the cumulative effect of "the many trial errors," coupled with Wilson's recantation, require that the Circuit Court grant him a new trial or an evidentiary hearing. (Ex. F.) On September 23, 2002, the Circuit Court of Cook County held an evidentiary hearing and on February 11, 2004, the post-conviction court denied Young's original and supplemental post-conviction petitions. (Ex. G, H, K.)

On June 4, 2004, Young filed a second post-conviction petition in the Circuit Court of Cook County, pursuant to 725 ILCS 5/122-1, *et seq.* (Ex. I.) In his second post-conviction petition, Young argued that: (1) his trial counsel failed to investigate the affidavit obtained by attorney Brandon Max showing that no medical records existed regarding A.W.'s treatment on or around November 7, 1989; (2) he is entitled to the medical files of A.W. under *Brady v. Maryland,* 373 U.S. 83 (1963); and (c) "inconsistent statements as substantive evidence." (Ex. I.) The post-conviction trial court denied Young's second post-conviction petition on June 24, 2004. (Ex. J.)

On March 9, 2004, Young filed a notice of appeal indicating that he was appealing the February 11, 2004 dismissal of his post-conviction petition. On post-conviction appeal,

Young argued:

> Deandra Wilson's recantation testimony that he did not see the shooting, was corroborated by Scott O'Neal and Ruth Wilson, and as Deanda Wilson was the only eyewitness to identify all of the defendants at the scene of the shooting, extraordinary circumstances exist which require the reversal of the dismissal of Thomas Carter and James Young's postconviction petitions.

(Ex. N.)  On June 7, 2006, the Illinois Appellate Court affirmed the dismissal of Young's post-conviction petition.  (Ex. K.)

In August 2006, Young filed a PLA in the Illinois Supreme Court arguing that:  (1) trial counsel failed to impeach the testimony of A.W. and argue very pertinent testimony of Cynthia Weatherspoon which could have exonerated him; (2) appellate counsel failed to raise the issues pertaining to A.W. and argue very pertinent testimony of Cynthia Weatherspoon which could have exonerated him on direct appeal; (3) the State failed to prove him guilty of first degree murder because his convictions were based on the unreliable eyewitness identification of Deanda Wilson, a biased witness, and on the testimony of A.W., whose in-court testimony directly contradicted her prior written statement to the police and her grand jury testimony; (4) the State violated the rules of discovery and due process; (5) the trial court erred in admitting evidence, as an alleged motive for the shooting of Dan Williams, that the defendants and Jerry Williams were members of rival gangs and that Jerry Williams had sexually assaulted A.W. two days before the shootings; and (6) trial counsel failed to tender a jury instruction providing that the jury could consider Deanda Wilson and A.W.'s prior inconsistent statements as substantive evidence.  (Ex. O.)  The Supreme Court of Illinois denied Young's PLA on November 29, 2006.

On January 31, 2006, Young filed yet another post-conviction petition in the Circuit Court of Cook County.  (Ex. L.)  In this third post-conviction petition, Young argued that:  (1)

trial counsel failed to investigate the affidavit obtained by attorney Brandon Max showing that

no medical records existed regarding A.W.'s treatment on or around November 7, 1989; (2) he is

entitled to the medical files of A.W. under *Brady v. Maryland*, 373 U.S. 83 (1963); (3) trial

counsel failed to interview and call witnesses who would have corroborated petitioner's alibi;

and (4) his post-conviction counsel failed to raise the issue pertaining to two key witnesses,

Cynthia Weatherspoon and Darren Owens, to show that the events A.W. claimed took place

never happened, and that A.W. was with Darren Owens during the time of the shooting. (Ex. L.)

On March 24, 2006, the Circuit Court of Cook County denied Young's third post-conviction

petition as frivolous and patently without merit. (Ex. M.) Young appealed the dismissal of his

third post-conviction petition to the Illinois Appellate Court, which is currently pending.[2]

On February 21, 2007, Young filed the present petition for habeas relief. Construing his

pro se habeas petition liberally, *see Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006),

Young raises the following claims: (1) actual innocence based on Deanda Wilson's several

recantations; (2) prosecutorial misconduct based on the State using Deanda Wilson's false

testimony and violating the rules of discovery by failing to disclose pretrial statements made by

A.W.; (3) ineffective assistance of trial counsel based on counsel's failure to offer A.W.'s grand

---

[2] Young renews his motion to stay his habeas petition until he has exhausted the claims in his third post-conviction petition. Young, however, fails to establish that he has good cause for failing to exhaust these claims, and thus the Court denies his renewed motion to stay. *See Rhines v. Weber*, 544 U.S. 269, 277-78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005); *Arrieta v. Battaglia,* 461 F.3d 861, 866 (7th Cir. 2006). Moreover, Young has exhausted the claims he brought in the present habeas petition – although some claims are procedurally defaulted as discussed below. *See Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004) ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim.").

jury testimony as substantive evidence; (4) ineffective assistance of post-conviction counsel; (5) a due process violation based on the trial court's admission of evidence regarding his gang membership. (R. 1-1.)

## LEGAL STANDARDS

### I. Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *Raygoza v. Hulick,* 474 F.3d 958, 963 (7th Cir. 2007); *see also Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005) (state court decision must be objectively unreasonable). To be considered "unreasonable," a state court's decision must lie "well

outside the boundaries of permissible differences of opinion." *Goodman v. Bertrand,* 467 F.3d 1022, 1028 (7th Cir. 2006) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)); *see also Dunlap v. Hepp,* 436 F.3d 739, 745 (7th Cir. 2006) (to be reasonable, state court decision must be minimally consistent with facts and circumstances of case); *Burgess v. Watters,* 467 F.3d 676, 681 (7th Cir. 2006) (reasonable state court decision is one of several equally plausible outcomes).

## II.     Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). More specifically, the "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id.*; *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Fair presentment requires the petitioner to set forth the operative facts and controlling legal principles to the state courts for each of his claims. *Bintz,* 403 F.3d at 863. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or by showing that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 729, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The

Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

### ANALYSIS

## I.    Actual Innocence

In his first habeas claim, Young contends that Deanda Wilson's recantation of his trial testimony establishes Young's actual innocence. Although claims of actual innocence are not cognizable as stand-alone claims on federal habeas review, actual innocence relates to the "fundamental miscarriage of justice exception" providing a gateway for the Court to review Young's procedurally defaulted claims. *See Herrera v. Collins,* 506 U.S. 390, 400, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Milone v. Camp,* 22 F.3d 693, 699 (7th Cir. 1994) ("A claim of actual innocence is relevant to determining whether a habeas corpus petition may be brought before a federal tribunal at all; it is not ordinarily cognizable in determining whether the writ should issue."). Accordingly, the Court denies Young's actual innocence habeas claim, but turns to whether his assertion of actual innocence excepts his procedurally defaulted claims.

To establish actual innocence, a petitioner must support his allegations "with new *reliable* evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (emphasis added); *see also Gomez v. Jaimet,* 350 F.3d 673, 679 (7th Cir. 2003). The habeas petitioner must also establish that "it was

12

more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 327. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *See Schlup,* 513 U.S. at 324.

Deanda Wilson recanted his trial testimony on three separate occasions. (Ex. K, *People v. Carter,* et al., 89 CR 27587, 90 CR 1823, Order, at 12.) First, Wilson recanted his trial testimony in a 1992 court-reported statement in which he exculpated some defendants, but continued to inculpate Carter, Kevin Young, and James Young. (*Id.*) In a 1998 affidavit, Wilson exculpated James Young and Carter, yet continued to inculpate Kevin Young. (*Id.*) Wilson also recanted his trial testimony at Young's 2002 post-conviction evidentiary hearing at which he testified that he did not see who shot Williams. (*Id.*) As the Illinois Appellate Court held in Young's post-conviction appeal, recantation testimony is inherently unreliable. (*Id.* at 12) (citing *People v. Steidl,* 177 Ill.2d 239, 260, 226 Ill.Dec. 592, 685 N.E.2d 1335 (1997)). Wilson's three varying recantations over an 11-year period are not the "sort of trustworthy and reliable evidence required in order to avoid procedural default by a claim of actual innocence." *Lucas v. Welborn*, 89 F.Supp.2d 976, 982 (N.D. Ill. 1999); *see also Schlup,* 513 U.S. at 324. Moreover, Young has failed to establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 327. Therefore, Young's actual innocence argument fails.

**II.     Prosecutorial Misconduct/Due Process Claim**

In his second habeas claim, Young brings a prosecutorial misconduct claim based on the State knowingly using Deanda Wilson's false testimony at trial and violating the rules of discovery by failing to disclose A.W.'s pretrial statements.  Young's first contention – that the State knowingly used Wilson's false testimony at trial – is procedurally defaulted.  To recap, a habeas petitioner "must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz,* 403 F.3d at 863.  As such, before a federal district court can review a habeas claim, the habeas petitioner must have set forth the operative facts and controlling legal principles to the state courts for each of his habeas claims.  *Id.*

Here, Young did not raise his prosecutorial misconduct argument based on the State's knowing use of Wilson's false testimony in either of his PLAs to the Supreme Court of Illinois. Therefore, Young's first prosecutorial misconduct argument is procedurally defaulted because he did not assert this claim to each level of the Illinois courts.  *See Lewis,* 390 F.3d at 1026. Further, Young fails to overcome his procedural default by establishing cause for the default and actual prejudice as a result of the alleged violation of federal law.  *See Coleman,* 501 U.S. at 750. As discussed above, Young has failed to establish the fundamental miscarriage of justice exception, as well.  *See id.*  Because Young has not presented any arguments to overcome this default, the Court is barred from reviewing this habeas claim on collateral review.  *See Miranda v. Leibach,* 394 F.3d 984, 997 (7th Cir. 2005).

The Court thus turns to Young's second argument in support of his prosecutorial

misconduct claim. In addressing Young's claim that the State failed to disclose pre-trial

statements made by A.W., the Illinois Appellate Court reasoned:

> During discovery, the State provided defendants with a written statement A.W. gave police following the occurrence, along with a transcript of her grand jury testimony of November 17, 1989. In these prior accounts, A.W. denied any knowledge of the shooting; claimed to have been out with a cousin that night; claimed that she had not seen [Kevin] Young until 5 or 6 a.m. on the morning after the shooting; and denied any knowledge of James Young or other defendants.

> At trial, A.W. testified that her prior account had been untruthful and was motivated by her fear at that time of Young and other gang members in Stateway; however, after she was relocated by the State in February of 1990, she had told Officer Edward Winstead and an assistant State's attorney the true account to which she also testified at trial.

> Relying on Supreme Court rules 412 and 415(b) (134 Ill.2d Rules 412, 415(b)) and the due process and fundamental fairness guarantees of the fourteenth amendment (U.S. Const., amend. XIV), defendants contend they were deprived of a fair trial by the State's failure to disclose A.W.'s latter account upon obtaining it.
> ....

> Rules 412 and 415(b) require that the State produce all written or recorded statements of its witnesses and that it supplement this production with any additional material acquired after discovery has been conducted. (134 Ill.2d Rules 412, 415(b).) However, the trial court has discretion to allow the introduction of evidence which has not been disclosed where there is no showing of surprise or prejudice to the defendant. Additionally, the defendant cannot persuasively claim prejudice if he does not request a continuance to investigate the alleged surprise statement, but instead proceeds with the trial. *People v. Moore* (1988), 178 Ill.App.3d 531, 127 Ill.Dec. 591, 533 N.E.2d 463; *People v. Ferguson* (1981), 102 Ill.App.3d 702, 57 Ill.Dec. 958, 429 N.E.2d 1321.

> Assuming, *arguendo,* that the State's failure to disclose the above material violated discovery rules, we do not believe that this so prejudiced defendants as to warrant a new trial. Our review of the record indicates that when the inconsistency in A.W.'s testimony became apparent defendants did not object or request a continuance; instead, they endeavored to impeach her by conducting a thorough cross-examination. We are unable to accept the contention that earlier disclosure of A.W.'s testimony would have materially affected defendants' trial strategy or enabled them to "more adequately discredit" A.W. Thus, there was no error on this issue. *Moore,* 178 Ill.App.3d 531, 127 Ill.Dec. 591, 533 N.E.2d 463;

see also *People v. Harris* (1988), 123 Ill.2d 113, 151-52, 122 Ill.Dec. 76, 526 N.E.2d 335; *People v. Cisewski* (1987), 118 Ill.2d 163, 113 Ill.Dec. 58, 514 N.E.2d 970.

Defendants also claim prejudice because the State failed to disclose that police had promised A.W. that she would not be prosecuted for perjury if she gave a different version of events at trial. We find no evidence suggesting that she received any such assurance. In fact, officer Winstead testified that he informed A.W. that he could make no guarantee of immunity. Additionally, defendants had sufficient opportunity to explore any suspected bias on cross-examination. Thus, defendants have failed to show how disclosure would have affected the outcome of the trial. *See Harris,* 123 Ill.2d 113, 122 Ill.Dec. 76, 526 N.E.2d 335.

*People v. Young,* 263 Ill.App.3d at 632-33.

Although the Illinois Appellate Court relied on Illinois case law and evidentiary rules when deciding this claim, the Illinois court is not required to cite United States Supreme Court cases or even be aware of such law, as long as neither its reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002). Here, the Illinois Appellate Court's decision does not contradict clearly established Supreme Court precedent.

Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "a defendant may obtain relief only if the nondisclosure deprived him of a fair trial." *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). To establish that he was denied a fair trial, Young must show that (1) the government suppressed evidence; (2) the suppressed evidence was favorable to his defense; and (3) the suppressed evidence was material. *See United States v. McMahan,* 495 F.3d 410, 423 (7th Cir. 2007). Evidence is material under *Brady* only if there exists a reasonable probability that its disclosure to the defense would have resulted in a different verdict. *See id.*; *United States v. Gillaum,* 372 F.3d 848, 858 (7th Cir. 2004).

As the Illinois Appellate Court explained, once the nondisclosure became apparent, Young and his co-defendants did not object or request a continuance, but instead thoroughly impeached A.W. with this evidence on cross-examination. The Illinois court thus concluded: "We are unable to accept the contention that earlier disclosure of A.W.'s testimony would have materially affected defendants' trial strategy or enabled them to "more adequately discredit" A.W." In addition, the Illinois Appellate Court rejected Young's argument that the police had promised A.W. that she would not be prosecuted for perjury if she gave a different version of events at trial because it was not supported by the evidence in the record and concluded that Young and his co-defendants failed to show how any such disclosure would have affected the outcome of the trial. Because A.W.'s statements were disclosed and used to impeach her on cross-examination, the Illinois Appellate Court's conclusion that the earlier disclosure of A.W.'s testimony did not materially affected defendants' trial strategy is in line with *Brady* and its progeny. *See McMahan,* 495 F.3d at 423 ("A probability of a different result is shown where the suppression undermines confidence in the outcome of the trial.") (citing *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Moreover, the Illinois court's conclusion that the alleged assurances made to A.W. lacked evidentiary support and did not affect the outcome of the case was not an "unreasonable application of" or "contrary to" clearly established Supreme Court precedent as set forth in *Brady* and its progeny. *See* 28 U.S.C. § 2254(d)(1). Therefore, the Court denies Young's prosecutorial misconduct/due process claim.

## III.   Ineffective Assistance of Trial Counsel

Next, Young contends that his trial counsel was constitutionally ineffective based on counsel's failure to offer A.W.'s grand jury testimony as substantive evidence at trial. Young,

however, has procedurally defaulted this claim. *See Bintz,* 403 F.3d at 863; *Lewis,* 390 F.3d at 1026. Although Young brought a claim that trial counsel was ineffective in offering A.W.'s prior testimony and statements for impeachment rather than as substantive evidence on direct appeal and in his first post-conviction petition, Young did not include any such claim in his two PLAs to the Supreme Court of Illinois. Instead, in his direct appeal PLA, Young argued that the prosecutors violated the rules of discovery and due process guarantees for failing to disclose that A.W. had repudiated her prior statements. (Ex. C.) In his post-conviction PLA, Young argued that trial counsel was ineffective for failing to tender a jury instruction concerning A.W.'s prior inconsistent statements. (Ex. O.) Accordingly, Young's ineffective assistance of trial counsel claim is procedurally defaulted because he did not assert this claim to each level of the Illinois courts. *See Lewis,* 390 F.3d at 1026.

In addition, Young fails to overcome his procedural default by establishing cause for the default and actual prejudice as a result of the alleged violation of federal law or by showing that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750. Because Young has not presented any arguments to overcome his default, the Court is barred from reviewing this habeas claim on collateral review. *See Miranda,* 394 F.3d at 997.

## IV.     Ineffective Assistance of Post-Conviction Counsel

In his next habeas claim, Young contends that his post-conviction counsel was constitutionally ineffective because counsel failed to raise and argue that trial counsel erred for failing to call Taia Young as a witness. Because criminal defendants do not have a Sixth Amendment right to post-conviction counsel, any argument based on post-conviction counsel's

errors must fail. *See Coleman,* 501 U.S. at 72 (citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)); *see also* 28 U.S.C.A. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Therefore, the Court denies Young's habeas claim based on post-conviction counsel's assistance of counsel.

## V.      Due Process Right to Fair Trial

Finally, Young contends that he was denied a fair and impartial trial based on the trial court's admission of evidence regarding his gang membership. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As such, state court evidentiary rulings are not cognizable on habeas review. *See id.* ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law in and of themselves are not cognizable on habeas review"). Young, however, claims that the trial court's admission of gang evidence denied him a fair and impartial trial presumably under the due process protections of the Fourteenth Amendment.

"Due process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Perruquet,* 390 F.3d at 510; *see also Anderson v. Sternes,* 243 F.3d 1049, 1053 (7th Cir. 2001) ("error must have produced a significant likelihood that an innocent person has been convicted"). In assessing a fair trial claim, the courts must consider whether the alleged unfair prejudice stemming from the gang-related evidence

convinces the court "'that but for the errors, the outcome of the trial probably would have been different,' thus denying the petitioner his due process right to a fundamentally fair trial.'"

*Anderson*, 243 F.3d at 1055 (citation omitted).

In addressing Young's fair trial claim on direct appeal, the Illinois Appellate Court reasoned:

> Defendants next argue that the admission of evidence regarding their alleged gang membership was error and deprived them of a fair trial. Evidence of a defendant's gang affiliation and activity is admissible despite the possibility of prejudice as long as there is evidence linking such activity to the crime charged. (*People v. Smith* (1990), 141 Ill.2d 40, 58, 152 Ill.Dec. 218, 565 N.E.2d 900.) Although the State is not required to prove the alleged offender's motive for murder, gang evidence is admissible to furnish a motive for an otherwise inexplicable act and also to show a common design or purpose. (*Smith,* 141 Ill.2d at 58, 152 Ill.Dec. 218, 565 N.E.2d 900; *People v. Bryant* (1993), 241 Ill.App.3d 1007, 1022, 182 Ill.Dec. 376, 609 N.E.2d 910.) In such cases, the probative value of the evidence is deemed to outweigh its prejudicial impact and the trier of fact is entitled to consider it. *People v. Buchanan* (1991), 211 Ill.App.3d 305, 320, 155 Ill.Dec. 831, 570 N.E.2d 344.

> In the case at bar, the evidence supported the State's theory that Williams and Kaufman were the victims of defendants' mistaken effort to avenge the sexual assault of Kevin Young's close friend, A.W. The day after the assault, a meeting was arranged between A.W. and Young wherein A.W., at Young's request, named her assailants in the assault. One of the assailants was named "Williams", and they all were proven to be members of a gang which was an "enemy" of Young's gang. Several hours later, Young met with co-defendants, they obtained weapons, and went out and committed the shootings at issue. The gang evidence was highly probative in providing a motive for the shooting and in explaining the common purpose and the means by which the crime was carried out. (See *People v. Saunders* (1991), 220 Ill.App.3d 647, 162 Ill.Dec. 827, 580 N.E.2d 1246.) Thus, it was properly admitted.

> Relying on *People v. Smith,* 141 Ill.2d 40, 152 Ill.Dec. 218, 565 N.E.2d 900, defendants argue that the gang evidence was irrelevant because the State failed to link Dan Williams to the rival gang or to show that defendants believed he participated in the assault of A.W. That case is distinguishable. In *Smith,* the alleged gang motive was found to be mere conjecture because the State failed to present any evidence that the defendant was a gang member or that he was acting on instructions of a gang leader at the time of the crime. (*See Smith,* 141 Ill.2d at 58-59, 152 Ill.Dec. 218, 565 N.E.2d 900.) Conversely, in the instant case, there was much direct evidence linking defendants to the same gang and supporting the

> gang-retaliation motive.  The mistaken-identity theory as to Williams was plausible, and evidence linking him to a gang was unnecessary in light of the remaining proof in this case.

*People v. Young*, 263 Ill.App.3d at 635-36.

In short, the Illinois Appellate Court concluded that the admission of the gang-related evidence was not in error.  Indeed, it is well-established under Illinois law that gang affiliation evidence which is admissible and relevant should not be excluded because it may have a tendency to prejudice the accused.  *See People v. Patterson,* 154 Ill.2d 414, 458, 182 Ill.Dec. 592, 610 N.E.2d 16 (Ill. 1992).  Meanwhile, in his habeas filings, Young has not argued or established that "but for the errors, the outcome of the trial probably would have been different." *See Anderson*, 243 F.3d at 1055.  In other words, because Young has not demonstrated that the trial court's admission of gang evidence was so serious as to render his trial fundamentally unfair, his last habeas claim must fail.  *See Estelle,* 502 U.S. at 72 (due process clause "does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules") (citation omitted).

Accordingly, Young has failed to establish that the Illinois Appellate Court unreasonably applied the controlling law to the facts of his case or that the Illinois court's decision was "contrary to" clearly established Supreme Court law.  *See Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (per curiam); *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004).

**<u>CONCLUSION</u>**

For these reasons, the Court denies Young's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). The Court further denies Young's renewed motion to stay his habeas petition.

Dated: October 5, 2007

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**